# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LADARIUS HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 17 C 4184 |
| ) | |
| VILLAGE OF FORD HEIGHTS, SHERIFF ) | |
| OF COOK COUNTY, SHERIFF TOM ) | |
| DART, in his Individual Capacity, ) | |
| DETECTIVE DANIEL BURKE, in his ) | |
| Individual Capacity, COOK COUNTY, ) | |
| FORMER COOK COUNTY STATE'S ) | |
| ATTORNEY ANITA ALVAREZ, in her ) | |
| Individual and Official Capacity, and COOK ) | |
| COUNTY STATE'S ATTORNEY KIM ) | |
| FOXX, in her Individual and Official Capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are three motions to dismiss Plaintiff Ladarius Harris' ("Harris") amended complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). The "Village's Motion" is brought by the Defendant Village of Ford Heights ("Village"); "Burke's Motion" is brought by Defendant Detective Daniel Burke ("Burke"); and the "County's Motion" is brought by Defendants Cook County ("County"), Sheriff of Cook County ("CCSO"), Sheriff Thomas Dart ("Sheriff Dart"), former Cook County State's Attorney Anita Alvarez ("Alvarez"), and current

Cook County State's Attorney Kim Foxx ("Foxx") (collectively, "Cook County Defendants"). For the following reasons, the Court grants the Village's Motion, grants Burke's Motion, dismisses the Cook County Defendants from Count I, and enters and continues the County's Motion.

## BACKGROUND

The following facts are taken from Harris' Complaint and assumed to be true for purposes of these motions. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in Harris' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

On December 2, 2014, Cook County sheriffs arrested Harris after entering his home without a warrant. Harris was removed from his home while barefoot, wearing only a t-shirt and shorts. The CCSO proceeded to interrogate Harris for over forty-eight hours regarding drugs, gangs, and the murders of Ephrom Jones ("Jones") and Cyrus Johnson ("Johnson"). Harris alleges that Burke, along with other unknown sheriffs and detectives, prepared false police reports that charged Harris with crimes that he did not commit. Harris further alleges that not only did officers fail to record their physical and psychological custodial coercion of Harris, but that notes from Harris' investigation and interrogation were destroyed, as well.

After interrogating Harris, Burke signed the documents charging Harris with the first degree murders of Jones and Johnson, this despite a lack of DNA, confession, or physical evidence linking Harris to their deaths. Harris also alleges that Burke

2

stated to Harris' mother, "I can look in his eyes and see that he didn't kill anybody," but that due to Harris' lack of cooperation, he would "just have to fight it in court." Harris claims that the CCSO and the Cook County State's Attorney's Office ("CCSAO") had the real shooters in custody, but they were released.

At some point, Sheriff Dart represented to the public that an eyewitness identification tied Harris to the crime, but Harris alleges that these widely circulated and published comments were "absolutely false and devoid of any factual basis." Harris also claims that a series of other damaging statements were released by the CCSO and later published by various news outlets. For example, the Chicago Sun-Times published the following CCSO statement, "Harris was arrested Tuesday at a home in Chicago after sheriff's police identified him as the shooter in a double homicide."

The CCSO and Alvarez charged Harris with fifty-three counts of murder, attempted murder, and aggravated discharge of a weapon. On December 4, 2014, Harris attended his probable cause and bond hearing, where the Circuit Court of Cook County set his bond at three million dollars after determining that there was probable cause. Harris contends that Burke and the CCSO falsified, destroyed, and coerced evidence in order to obtain probable cause and bring about his pretrial detention. Harris also alleges that after Alvarez left the CCSAO, Foxx continued with Harris' prosecution.

While awaiting trial, Harris spent 904 days in maximum security jail at the Cook County Department of Corrections, during which time he was allegedly abused and threatened by other inmates, subjected to an infestation of rats, roaches, and mold, and contracted an eye infection that required surgery. He was also forced to give up his vegetarianism while in custody. On May 26, 2017, all first degree murder charges against Harris were dismissed, resulting in his release. Harris alleges that "almost a year ago," the CCSAO knew that he was not guilty and allowed him to sit in jail nonetheless.

On June 2, 2017, Harris filed a complaint against the Village, Burke, and the Cook County Defendants. On October 31, 2017, Harris amended his original complaint and filed his now-operative thirteen-count Complaint, which sets forth the following causes of action. Count I, stylized as "Federal Malicious Prosecution and Due Process" action, sets forth at least two, and possibly three or four, claims under the Fourth and Fourteenth Amendments; it is brought pursuant to 42 U.S.C. § 1983 and against all Defendants. Count II alleges a § 1983 federal conspiracy claim against all Defendants. Count III is a cause of action against Sheriff Dart and the CCSO, brought under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Counts IV through VII are state law claims. Count IV is a conspiracy claim against all Defendants; Count V is a malicious prosecution claim against Burke and the County Defendants; Count VI is a false imprisonment action against Burke, the CCSO, Sheriff Dart, and Cook County; and Count VII is a defamation claim against the

CCSO, Sheriff Dart, and Cook County. Counts VIII, IX, and X are state law indemnification actions against, respectively, the Village, Cook County, and the CCSO. Counts XI, XII, and XIII are state law *respondeat superior* actions against, respectively, the Village, Cook County, and the CCSO. Each party seeks to be dismissed from the case.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In conducting our review, we must consider not only the complaint itself, but also…documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019—20 (7th Cir. 2013) (internal citations and quotation marks omitted).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be

described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. The Village's Motion

The Village seeks to be dismissed from the case in its entirety. Harris does not oppose the Village's Motion, instead utilizing his response to ask the Court to dismiss the case under Federal Rule of Civil Procedure 41(a)(2). "An unresponsive response is no response." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). As the Village has provided the Court with "plausible reasons for dismissing" the Complaint – reasons unopposed by Harris – we grant its motion. *Id*. The Village is dismissed from all counts to which it is a party (Counts I, II, III, IV, VIII, and XI).

### II. Burke's Motion

#### A. Count I – "Federal Malicious Prosecution and Due Process" Claim

To state a § 1983 claim, Harris must "allege that a government official, acting under color of state law, deprived [him] of a right secured by the Constitution or the laws of the United States." *Estate of Sims ex rel Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Before liability under § 1983 can be "meaningfully explored, it is

6

necessary to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Burke is quick to point out that Harris violated this tenet by commingling his Fourth and Fourteenth Amendment claims in Count I.

Per Federal Rule of Civil Procedure 10(b), "If doing so would promote clarity, each claim founded on a separate transaction or occurrence…must be stated in a separate count or defense." However, "[s]eparate counts…are required only to the extent they are necessary to clarify the claims in the complaint." *Landmark Document Servs., LLC v. Omega Litig. Sols., LLC*, No. 05 C 7300, 2006 WL 2861098, at *4 (N.D. Ill. Sept. 29, 2006). "Furthermore, noncompliance with Rule 10(b) is rarely a basis for dismissing a complaint 'unless the complaint is not understandable and *does not provide the defendant with fair notice of the claims against him*.'" *Id*. (emphasis added) (quoting *Plohocki v. Chi. Sch. Reform Bd. of Trs.*, No. 99 C 6710, 2000 WL 150748, at *6 (N.D. Ill. Feb. 4, 2000)).

Here, Harris' opening cause of action is an indiscernible hodgepodge of loosely connected legalese. Count I itself is titled "Federal Malicious Prosecution and Due Process." Harris' opposition brief, however, identifies said claims as "a Fourth Amendment illegal seizure claim for his pretrial detention without probable cause" and "a Fourteenth Amendment due process claim for his pretrial detention based on false evidence." Even more confusingly, in the same opposition memorandum, Harris argues that Count I is viable because it adequately pleads at least one of a trio of

7

distinct legal actions, (a) "a Fourth Amendment claim for pretrial detention without probable cause," (b) "a malicious prosecution claim," and (c) "a due process claim under the Fourteenth Amendment." Finally, returning to the Complaint to complete the legalistic ouroboros, Count I grounds Harris' due process claim in his allegations of malicious prosecution, this despite the Seventh Circuit's explicit warning "against shoe-horning into the more general protections of the Fourteenth Amendment claims for which another amendment provides more specific protection." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010).

The consequence of this confusion is that the Court itself is unsure of what constitutional torts Harris has alleged to have been committed by Burke or the Cook County Defendants. Burke's and Harris' arguments focused on Count I reveal this plainly, as each party finds itself grasping at divergent tendrils of semi-related bodies of law, rather than honing in on an identifiable federal cause of action. While Count I does not necessarily disintegrate into a "kitchen sink approach to pleading," its indiscernible blending of distinct constitutional theories renders it a "vague, confusing…articulation of the…legal basis for the claim[]." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011). Such complaints have been found "wanting," as they "frustrate Rule 8's objective: framing the issues and providing the basis for informed pretrial proceedings." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946—47 (7th Cir. 2013) (internal citation and quotation marks omitted).

To be sure, regardless of the constitutional theory under which Harris is actually trying to proceed, the present-day Seventh Circuit jurisprudence governing said claim is likely to present hurdles of its own. For example, until the Supreme Court's recent ruling in *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, (2017), it was a Seventh Circuit axiom that "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001), *abrogated by Manuel*, 137 S.Ct. 911 (2017). Last year's *Manuel* ruling called this notion into question, holding that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." 137 S.Ct. at 920.

But rather than wholesale overrule *Newsome* and its descendants' rejection of a federal malicious prosecution claim, *Manuel's* recognition of a federal pretrial detention claim left the issue for the Seventh Circuit to determine on remand. *See id*. at 923 (Alito, J., dissenting) ("What is perhaps most remarkable about the Court's approach is that it entirely ignores the question that we agreed to decide, *i.e.*, whether a claim of malicious prosecution may be brought under the Fourth Amendment"). The Court expressly requested that the Seventh Circuit decide the "element of, or rules applicable to" a "Fourth Amendment claim once legal process began." *Id*. at 922.

Courts in this very district have responded differently. In *Powell v. City of Chicago*, a fellow Northern District court reviewed the allegations before it and

9

determined that Illinois' malicious prosecution action more closely tracked the plaintiff's pretrial detention assertions than did the elements of a false arrest claim. No. 17 C 5156, 2018 WL 1211576, at *4 (N.D. Ill. Mar. 8, 2018). The court noted:

> Outside the Seventh Circuit, most Circuits recognize Fourth Amendment malicious-prosecution claims with the following elements: the defendants initiated a criminal proceeding against the plaintiff; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty beyond the initial seizure.
> *Id*.

"And those Circuits," the court continued, "permit Fourth Amendment malicious-prosecution claims 'regardless of what alternative remedy a state provides.'" *Id*. (quoting *Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013) (collecting cases)). The *Powell* court determined that "the Supreme Court's *Manuel* decision requires this Court to allow Plaintiff's claim to proceed, absent a new contrary opinion by the Seventh Circuit." *Id*. at *5. A federal malicious prosecution claim might observe these tenets, then, at the pleadings stage.

And yet, just last month, in *Kermitt Lattimore & Carol G. Hutton-Lattimore v. Village of Streamwood, et al.*, a different Northern District judge flatly rejected the *Powell* approach, holding that "[a]t present…Plaintiffs may not bring a federal malicious prosecution claim." No. 17 C 8683, 2018 WL 2183991, at *5 (N.D. Ill. May 11, 2018). In any event, as we are uncertain that a federal malicious prosecution action is even before us, any ruling from this Court on the matter would be premature.

If Harris is instead marshaling a false arrest theory, he may well run into an issue with timeliness. Although state law governs the statute of limitations period for § 1983 claims, the "accrual date of a § 1983 cause of action is a question of federal law that is not resolved by state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). To establish the accrual date, the Court must "first identify the plaintiff's injury," then determine "when the plaintiff could have sued for that injury." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). A § 1983 claim accrues when a plaintiff "knows or should know that his or her constitutional rights have been violated." *Id.* at 581—82. If Harris clarifies his pretrial detention claim as one pled according to false arrest concepts, it likely would have accrued "when legal process was initiated against him," at the probable cause or bond hearing where charges were brought, "and the statute would have begun to run from that date…." *Wallace*, 549 U.S. at 390.

Finally, for any claim that Harris believes sounds in the Due Process Clause of the Fourteenth Amendment, he should take care to avoid amended pleadings that frame the tort as "nothing more than a hybrid of his Fourth Amendment false arrest and state law malicious prosecution claims…." *Fox*, 600 F.3d at 841. And, as with the Fourth Amendment, any claims that plead a due process action should be cognizant of the distinct legal hurdles that face Fourteenth Amendment evidence fabrication claims and Fourteenth Amendment malicious prosecution claims. *See Bolden v. City of Chi.*, 293 F.Supp.3d 772, 780, 782—83 (N.D. Ill. 2017).

11

To address these concerns, however, would be imprudent, as Count I is too disarrayed for the defendants and the Court to know which concerns are relevant. Burke and the County Defendants are not saddled with the burden of making guesswork of the charges against them. That task is squarely Harris', one he must carry out should he choose to amend. Count I is dismissed as violative of Rule 10(b), without prejudice.

**B. Count II – 42 U.S.C. § 1983, Conspiracy to Deprive Harris of His Constitutional Rights; and Counts IV, V, and VI – State Law Claims**

A conspiracy alone is not an independent basis for § 1983 liability. *Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 984 (N.D. Ill. 2013) (citing *Cobbs v. Evans,* No. 13 C 3990, 2013 WL 5356595 at *1–2 (N.D. Ill. June 3, 2013)). There must be an underlying constitutional injury; otherwise, the conspiracy claim fails. *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).

Additionally, pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]t is well-established that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to

trial." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 505 (7th Cir. 2011) (citing *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)).

Harris' federal conspiracy claim in Count II hinges on the nonactionable claims against Burke in Count I, and his state law claims arise based on the supplemental jurisdiction provided by Counts I and II. Count II cannot continue without a viable underlying constitutional claim against Burke, and the Court declines to exercise supplemental jurisdiction over Harris' remaining state law claims. As against Burke, we dismiss Counts II, IV, V, and VI, without prejudice. Of course, should Harris amend his Count I claims consistent with federal pleadings standards, he can readily reassert Counts II, IV, V, and VI against Burke.

### III. The County's Motion

Having already determined that Count I fails to live up to federal pleading standards, we dismiss it as against the Cook County Defendants. The remaining counts alleged against the distinct individuals that comprise the Cook County Defendants cannot be dismissed so easily, however. Indeed, in the County's Motion, a number of compelling immunity arguments have been presented – based on the Eleventh Amendment and absolute or qualified immunity – that may well warrant the Complaint's dismissal. However, to account for the likelihood of an amended pleading that shores up the deficiencies in Count I, the Court finds it economical to enter and continue the County's Motion until such time as Harris declines to file a

second amended complaint, at which point we will promptly entertain the County's Motion as it stands. Should Harris choose to amend his pleadings, the Cook County Defendants will be given leave to file a new motion to dismiss consistent with the new operative complaint. For now, Count I is dismissed as against the Cook County Defendants, and the County's Motion is entered and continued.

## CONCLUSION

For the reasons stated above, the Court grants the Village's Motion and dismisses the Village from the case. The Court grants Burke's Motion and dismisses him from the case, as well. Count I is also dismissed as against the Cook County Defendants. Our dismissal in all instances is without prejudice. The County's Motion is entered and continued.

Harris has thirty (30) days from the filing of this Opinion to amend his Complaint. Burke and the Cook County Defendants will be given twenty-one (21) days from the filing of the amended complaint to present to the Court new motions to dismiss; Harris will have fourteen (14) days to respond; and Burke and the Cook County Defendants will have seven (7) days to reply. Should Harris decline to amend his Complaint within thirty (30) days, the Court will rule with haste on the County's Motion as it stands. It is so ordered.

_____
Dated: 6/6/2018          Charles P. Kocoras
                         United States District Judge